UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SIPCO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ABB INC.; COULOMB TECHNOLOGIES, INC.; | ) | |
| ECOTALITY, INC.; ELECTRIC | ) | |
| TRANSPORTATION ENGINEERING | ) | Civil Action No.:  6:11-cv-0048-LED-JDL |
| CORPORATION dba ECOTALITY NORTH | ) | |
| AMERICA; ENERGYHUB, INC.; JETLUN | ) | JURY TRIAL DEMANDED |
| CORPORATION; INGERSOLL-RAND | ) | |
| COMPANY; INGERSOLL-RAND SCHLAGE | ) | |
| LOCK HOLDING COMPANY LLC; SCHLAGE | ) | |
| LOCK COMPANY; TRANE, INC.; and | ) | |
| SMARTLABS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS**

Plaintiff SIPCO, LLC continues to assert 44 claims, many of which are invalid for

indefiniteness, across 3 patents-in-suit against the Ingersoll Rand defendants (the "Schlage/Trane

Defendants").  In its letter brief to the Court (Dkt. No. 171-1), the Schlage/Trane Defendants

identified two exemplary indefinite claim terms, but had previously identified no less than 22

terms as indefinite in its P.R. 4-3 Disclosures ("Joint Claim Construction Statement") (Dkt. No.

168).  In its order of February 13, 2012 (Dkt. No. 191), the Court allowed the Schlage/Trane

Defendants to file a Motion for Summary Judgment of Invalidity For Indefiniteness, under 35

U.S.C. § 112, ¶ 2, for two exemplary claim terms identified in the letter brief: "relatively low

power" and "means for data transfer".  While the Schlage/Trane Defendants continue to maintain

that other terms identified in the P.R. 4-3 Disclosures are indefinite and without waiving its arguments to that effect, this brief addresses only the terms identified above.

## I.      STATEMENT OF ISSUE

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rules CV-7 and CV-56, and this Court's Order (Dkt. No. 191), this motion presents the issue of whether the Schlage/Trane defendants are entitled to summary judgment that claims 1, 3, 18, 24, 34, 49, 55, and 60 of U.S. Patent No. 6,437,692 (the "'692 patent", attached hereto as Ex. A) and claim 22 of U.S. Patent No. 7,697,492 (the "'492 patent", attached hereto as Ex. B) are invalid under 35 U.S.C. § 112, ¶ 2.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

The '692 patent

1.  Claim 1 recites in relevant part:

> 1. A system for remote data collection, assembly, and storage comprising: . . . a plurality of relatively low-power radio-frequency (RF) transceivers dispersed geographically at defined locations . . . .

Ex. A at 18:44-67.

2. Claim 3 recites:

> 3. The system as defined in claim 1, wherein each wireless transmitter is configured to transmit a relatively low-power radio-frequency (RF) signal.

Ex. A at 19:16-18.

3. Claim 18 recites in relevant part:

> 18. A method for collecting information and providing data services comprising: . . . placing a plurality of relatively low-power radio-20 frequency (RF) transceivers dispersed geographically . . . .

Ex. A at 20:13-30.

4. Claim 24 recites in relevant part:

> 24. A method for controlling a system comprising:  . . . transmitting the RF signal, via a relatively low-power RF transceiver, to a gateway; . . . .

Ex. A at 20:42-63.

5. Claim 34 recites:

> 34. The system as defined in claim 32, wherein each wireless transmitter is configured to transmit a relatively low-power radio-frequency (RF) signal.

Ex. A at 21:52-54.

6. Claim 49 recites in relevant part:

> 49. A system for managing an arrangement of application specific remote devices comprising:  . . . at least one wireless relatively low-power RF transceiver per computer program configured to receive the RF signal from the gateway; . . . .

Ex. A at 23:1-29.

7. Claim 55 recites in relevant part:

> 55. A method for collecting information and providing data services comprising:   . . . placing a plurality of relatively low-power radiofrequency (RF) transceivers dispersed geographically . . . .

Ex. A at 23:43-24:5.

8. Claim 60 recites in relevant part:

> 60. A method for controlling an existing control system with a local controller comprising:  . . . remotely collecting data from at least one relatively low-power radio-frequency (RF) transceiver integrated with the data translator; . . . .

Ex. A at 24:15-48.

9. Claim 22 of the '492 patent recites in pertinent part:

> 22.   In a system for controlling geographically diverse devices from a central location, a communications device comprising:  . . . and wherein the packeting means comprises: means for identifying intended recipients; means for identifying a sender; means for indicating a command; means for data transfer; means for

indicating potential error; means for indicating a byte length of a packet; means for indicating a total number of packets in a message; means for identifying a message; means for alerting a recipient to an incoming packet; and means for indicating an end of a packet.

Ex. B ('492 Patent) at 16:13-35.

## III.    ARGUMENT

### A.    Legal Standard

Every valid patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2. This statutory provision, the so-called "definiteness" requirement, is critical to the patent process.  The purpose of the standard "is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). "Without the safeguards of this provision, competitors would be unable to identify the boundaries of the patented invention, thereby defeating the public notice function of patent claims."  *Haliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Means-plus-function claims, expressly permitted under 35 U.S.C. § 112(6), are claims in which an element of the claim is expressed as a means or step for performing a specified function, without the recital of structure in support thereof.  If the patentee chooses to write a claim element in this format, he assumes specific obligations:

> If one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language.  If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112.

*Default Proof Credit Card Systems*, 412 F.3d 1291, 1298 (citing *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).   In other words, the patent specification must clearly identify structure capable of performing the claimed function.  *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379 (Fed. Cir. 2001).

However, the patent specification must do more than simply identify structure that could potentially perform the claimed function—it must clearly link the structure disclosed to the claimed function.  "The duty of a patentee to clearly link or associate structure with the claimed function is the *quid pro quo* for allowing the patentee to express the claim in terms of function under section 112, paragraph 6."  *Medical Instrumentation and Diagnostics Corporation v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003); *see also Default Proof Credit Card System*, 412 F.3d 1291, 1298 ("a structure disclosed in a specification qualifies as 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.").

All patent claim elements, not just means-plus-function claim elements, must satisfy Section 112, ¶ 2.  Patent claims that use words of degree must describe a way to determine the claim scope:  "When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.'"  *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) (citing *Seattle Box Co., Inc. v. Indus Crating & Packing, Inc.*, 731 F.2d 818 (Fed. Cir. 1984)).

### B.  "Means for Data Transfer"

Claim 22 of the '492 patent recites in pertinent part:

> 22. In a system for controlling geographically diverse devices from a central location, a communications device comprising:
>
> …
>
> and wherein the packeting means comprises: means for identifying

> intended recipients; means for identifying a sender; means for
> indicating a command; <u>means for data transfer</u>; means for
> indicating potential error; means for indicating a byte length of a
> packet; means for indicating a total number of packets in a
> message; means for identifying a message; means for alerting a
> recipient to an incoming packet; and means for indicating an end
> of a packet.

Ex. B at 16:13-35 (emphasis added). Although this claim element itself includes several means-plus-function claim components, the Court has granted the Schlage/Trane defendants permission to seek summary judgment only on the "means for data transfer" claim element. This claim element uses the convenience of the "means-plus-function" drafting convention, but fails to provide the *quid pro quo* of clearly identifying and linking the structure associated with that function that is required to use that convenience.

In construing a means-plus-function claim element, the first step is to determine the claimed function. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) (citations omitted). That step is simple and straightforward in this instance: the function of the recited means claim element is "data transfer," *i.e.,* transferring data.

After identifying the claimed function, the court must then determine what structure, if any, disclosed in the specification corresponds to the claimed function. *Id*. The second step in construing a means-plus-function claim element is to determine what structure described in the patent specification is specifically linked to the claimed function. *Id*. "Under 35 U.S.C. § 112 ¶ 2 and ¶ 6, a means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Allvoice Computing PLC v. Nuance Comms., Inc.*, 504 F.3d 1236, 1241 (Fed. Cir. 2007) (citing *Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1381-82 (Fed.Cir.1999)). In this instance, the '492 patent does not describe, or link, *any* structure to the

claimed function.  Specifically, there is no discussion in the '492 patent of any mechanism by which the packaging means provides for data transfer.

The term "data transfer" does not appear anywhere in the '492 patent specification, other than in claim 22.  The term "transferring data" does not appear anywhere in the patent.  The term "transfer" appears only twice in the '492 patent specification outside of claim 22.  In the first instance, the patent refers to transferring "personal information" such as billing information, to a vending machine.  Ex. B at 13:16-20.  There is no discussion of any structure within a "packeting means" that can transfer data.  In the second instance, the '492 patent mentions transferring "vehicle diagnostics" from an automobile.  Ex. B at 4:45-53.  Again, however, there is no discussion of any packeting means, or any structure within a packeting means that allows for the transfer of data.

In its claim charts, SIPCO has failed to identify any structure mentioned in the '492 patent which is linked to the data transfer function within the packeting means.  Exhibit A to Joint Claim Construction Statement (Dkt. No. 168-1) at p. 19.  In fact, rather than identify any such structure, SIPCO has asserted that this claim element is not a means-plus-function claim recitation.  *Id*.  It is difficult to imagine how such an argument could be supported.

The Federal Circuit has placed a heavy presumption on claim elements that use the word "means." *See*, *e.g.*, *Sage Prods., Inc. v. Devon Inds., Inc.*, 126 F.3d 1420, 1427 (Fed. Cir. 1997) ("The use of the word 'means,' which is part of the classic template for functional claim elements, gives rise to 'a presumption that the inventor used the term advisedly to invoke the statutory mandates for means-plus-function clauses.') (citations omitted).  SIPCO has provided no basis for challenging this heavy presumption.

There can be no real dispute that the "means for data transfer" claim element is written in a means-plus-function format, and thus is construed according to 35 U.S.C. § 112, ¶ 6.  Yet, despite using this claim convention, the '492 patent fails to identify any structure within the packeting means that performs the claimed function of transferring data.  This renders the claim element, and thus the claim, indefinite, and invalid under 35 U.S.C. § 112, ¶ 2.

C.      **"Relatively Low Power"**

Claims 1, 3, 18, 24, 34, 49, 55, and 60 of the '692 patent recite the phrase "*relatively* low power."  *See* Ex. A.  The '692 patent also includes claims that recite the term "low power." (*See*, *e.g.*, Ex. A at claims 32, 42, and 55).  This Court has previously interpreted the terms "low power" and "relatively low power" in the case of *SIPCO v. Datamatic*.  *See SIPCO, LLC v. Datamatic, Ltd. et al.*, Cause No. 6:09-cv-00532-LED-JDL, 2011 WL 1742669 (E.D. Tex. 2011) (unreported) ("Datamatic Claim Construction Opinion") at *4-7 (attached hereto as Ex. C).  This case is different from *Datamatic*, however, because in that case the parties agreed that the two terms had an identical meaning.

These two claim terms *cannot possibly* have the same meaning.  First, it is hornbook law that every word in a patent claim must have meaning.  *See*, *e.g.*, *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (refusing to read out the modifier "operatively" when construing the term "operatively connected" because "the patentee could as easily have used the word 'connected' alone" if he had not intended to give the term a different meaning).  By interpreting these two claim terms to have an identical meaning, the word "relatively" is effectively eliminated.  Had the patentee intended these two phrases to have the same meaning, he could have simply used the term "low power" in all instances.  In fact, independent claim 55 of the '692 patent uses *both terms* "low power" and "relatively low power"

to refer to two different features of the same system, adding additional support that these two terms have different meanings.

Second, the doctrine of claim differentiation requires that these claim terms have different scope. Claim 32 of the '692 patent defines a system having a transmitter utilizing a "low-power radio-frequency." Ex. A at 21:22-26. Claim 34 of the '692 patent, which is dependent on claim 32, differs from the independent claim in that it requires transmitters to transmit "a relatively low-power radio-frequency (RF) signal." Ex. A at 21:52-54. In other words, the only difference between these two claims is the use of the term "relatively" in dependent claim 34. According to the doctrine of claim differentiation, these two claims must be of different scope. *See*, *e.g.*, *Tandon Corp. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed.Cir.1987) ("To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").

That can only be achieved if the word "relatively" further limits the phrase "low power. The phrase "relatively low power" is not only a term of degree, it is also one of relationship. The "low power" portion of the claim element is a term of degree: it is a phrase describing the extent or scope (or in this case the amount) of power. The word "relatively" adds a relationship component: the amount of power is being compared (relative to) some other amount of power.

Thus, to interpret the phrase "relatively low power" requires two steps. First, the Court must interpret the meaning of the phrase "low power" as a matter of degree; then, the Court must determine the relationship component, required by the word "relatively." On both counts, the '492 patent specification fails to provide any guidance as to the claim scope, and therefore must be determined to be invalid under 35 U.S.C. § 112, ¶ 2.

Since the phrase "low power" is a matter of degree or amount, the patent specification must provide "some standard for measuring that degree." *Enzo Biochem, Inc.*, 599 F.3d at 1332. However, nowhere does the '692 patent explain, in any way, what is meant by the term "low power."  There is simply no discussion anywhere in the '692 patent that allows a person of skill in the art—or anyone, for that matter—to understand how much power is "low power."

Similarly, there is nothing in the '692 patent that would allow a person of ordinary skill in the art to understand the relationship component of the claim element.  A device transmits a "relatively" low power signal if its signal is lower in power than the other device in the comparison.  Yet, there is no description of any comparison in the '692 patent; the patent simply fails to provide the comparison, or relationship, needed to understand the scope of this claim.

Furthermore, at SIPCO's urging, the prosecution history of the '692 patent has been grossly distorted.  During prosecution, SIPCO attempted to distinguish its claims from a prior art patent which disclosed a satellite system.  In its arguments to the Patent Office, SIPCO explained that RF transmissions can encompass a large spectrum of frequencies.  SIPCO described these frequencies as extending from "very low frequency (VLF) to extremely high frequency (EHF)."  Request for Reconsideration, dated November 9, 2001 (attached hereto as Ex. D) at 4.  "It is further well-known that satellite transmissions typically occur in a range of RF that encompass microwave spectrum (*i.e.*, the super high frequency (SHF) and EHF bands)."  *Id*. However, frequency (the term SIPCO argued distinguished its claims from the prior art) and power (the term in the claim) are significantly different concepts.  Power is a measure of the amount of energy converted or transferred per second.  For example, one Watt (power) is equal to one Joule (energy) transferred in one second.   "Watt", Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/watt, accessed on February 27, 2012 (attached

10

hereto as Ex. E).  Frequency describes a particular feature of the signal, *i.e.*, the number of complete oscillations per second.   "Frequency", Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/frequency, accessed on February 27, 2012 (attached hereto as Ex. F).  Signals having a high frequency can be low power, high power, or anything in between.  Similarly, signals having a low frequency can have a high power or a low power.  SIPCO's muddling of these terms in the prosecution history does not alleviate the indefiniteness of the terms; if anything, it compounds it.

Even this Court's prior claim construction highlights the indefinite nature of these claim terms.  The Court concluded that both the terms "relatively low-power" and "low-power" mean "power having limited transmission range."  *See* Ex. C, Datamatic Claim Construction Order, 2011 WL 1742669 at *7.  Yet, *every* transmission has a limited range.  The range of a transmission is directly related to the amount of power (energy/second) applied to the transmission.  Thus, this Court's prior construction of these terms effectively eliminates the word "low" from the claim terms: the Court's prior construction would encompass every transmission.

## IV.    CONCLUSION

For the foregoing reasons, the Schlage/Trane Defendants request that the Court grant summary judgment that the following claims of the asserted patents are indefinite and, therefore, invalid under 35 U.S.C. § 112, ¶ 2:

'492 Patent:  Claim 22

'692 Patent:  Claims 1, 3, 18, 24, 34, 49, 55, and 60

Dated: February 27, 2012.                          Respectfully submitted,


                                                   *s/Paul B. Hunt*_____
                                                   Paul B. Hunt (Indiana Bar #15465-71)
                                                   (Lead Attorney – *Pro Hac Vice*)
                                                   (paul.hunt@btlaw.com)
                                                   **Barnes & Thornburg LLP**
                                                   11 South Meridian Street
                                                   Indianapolis, IN  46204
                                                   Telephone:  (317) 231-7453
                                                   Facsimile:   (317) 231-7433

                                                   ATTORNEYS FOR DEFENDANTS
                                                   INGERSOLL-RAND COMPANY;
                                                   INGERSOLL-RAND SCHLAGE LOCK
                                                   HOLDING COMPANY LLC; SCHLAGE
                                                   LOCK COMPANY; and TRANE, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 27, 2012.  Any other counsel of record will be served by First Class U.S. mail on this same date.

*s/Paul B. Hunt*
Paul B. Hunt

INDS02 1207797v2

13